# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| OSWALDO GONZALEZ (B40078), ) | |
| ) | |
| Plaintiff, ) | Judge Charles R. Norgle, Sr. |
| ) | |
| v. ) | |
| ) | No. 13 C 5766 |
| ) | |
| SALEH OBAISI, & DR. WILLIAMS, ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

Plaintiff Oswaldo Gonzalez (hereinafter, "Plaintiff") filed this *pro se* lawsuit pursuant to 42 U.S.C. § 1983, alleging that defendants Dr. Saleh Obaisi and Physician Assistant La Tayna Williams (collectively, "Defendants") were deliberately indifferent to his serious medical needs after he suffered a head injury in a fall down the stairs at Stateville Correctional Center ("Stateville"). Defendants filed a motion for summary judgment. Plaintiff responded with several motions, including a motion for extension of time and a motion pursuant to Fed. R. Civ. P. 56(d) stating that he needed additional discovery in order to respond. Plaintiff ultimately filed a substantive response to the motion. Based on this Court's review of all the materials submitted by both sides in connection with the summary judgment motion, the Court determines that Plaintiff is entitled to additional discovery, and, regardless, disputed issues of material fact preclude summary judgment. Further, in light of the complicated medical and legal issues raised by this case, the Court recruits counsel to represent Plaintiff. Gary S. Kaplan, of Seyfarth Shaw, LLP, 131 S. Dearborn St., Suite 2400, Chicago, IL 60603, is recruited to represent Plaintiff in accordance with counsel's trial bar obligations under the District Court's Local Rule 83.37 (N.D.

Ill.). Counsel should confer with Plaintiff within the next 60 days, and report to the Court as to what additional discovery he needs to proceed in this matter.

## BACKGROUND

Given that counsel is being recruited, the Court provides only a brief recitation of the facts relevant to its analysis, with any disputes between the parties noted. On July 17, 2012, Plaintiff injured his head and left knee after falling down a set a stairs. Following the fall, Plaintiff was treated by Williams, who diagnosed him with a head contusion and a left knee contusion. Plaintiff was observed for 24 hours in the Stateville infirmary and received X-rays to his head and knee, which were negative. During the period of time from July 18, 2012, through August 8, 2012, Stateville was on lockdown. There is no dispute that this lockdown resulted in the re-scheduling of certain non-emergency medical appointments, although Plaintiff states in a declaration that he observed some inmates being taken to the Health Care Unit ("HCU") for treatment during this 21-day period.

During this period, Plaintiff sent 13 medical request slips, complaining of severe headaches, as well as nausea, vision problems, dizziness, and knee pain. He stated that he was in severe pain and had not been given any pain reliever upon his discharge from the infirmary. Additionally, on July 20, 2012, Plaintiff submitted several grievances regarding the fall and his medical care. The counselor who reviewed the grievances indicated that certain of them were forwarded to the HCU for response. On June 6, 2013, Plaintiff received a response from the Illinois Department of Corrections ("IDOC") Administrative Review Board ("ARB") to his July 20, 2012, grievances.

At one point, according to his medical records, Plaintiff was scheduled to see Dr. Obaisi

on July 31, 2012, but the appointment was rescheduled to Aug. 9, 2012, due to the lockdown. The day before that appointment, however, correctional officers brought Plaintiff to the HCU after he vomited in the dining hall. Dr. Obaisi diagnosed Plaintiff with a migrane headache and prescribed certain medications, including a beta blocker, anti-nausea medications, and Motrin. Plaintiff alleges that the medications intensified his symptoms, rather than relieved them.

On August 29, 2012, Plaintiff suffered a seizure in his cell. He had no prior history of seizures before the accident in which he fell down the stairs. Dr. Obaisi evaluated Plaintiff, ordered a CT scan, and prescribed anti-seizure medication, as well as pain medication. Dr. Obaisi attempted to admit Plaintiff to the infirmary for 24-hour evaluation, but Plaintiff declined. Plaintiff contends the cells at the infirmary were dirty and often contaminated with feces, which caused him to decline the evaluation. Following his seizure, and until he was transferred from Stateville to Pontiac Correctional Center in August 2013, Plaintiff received treatment from Dr. Davis at Stateville's Seizure Clinic. Plaintiff does not complain about Dr. Davis' treatment of him. However, he does claim that the medications prescribed by Dr. Obaisi continued to intensify his symptoms and cause side effects until Jan. 18, 2013, when Dr. Obaisi prescribed him Tylenol 3, a different pain reliever. Plaintiff also alleges that Dr. Obaisi failed to provide proper treatment for his knee injury, resulting in unnecessary pain.

In their summary judgment motion, Defendants assert that when Stateville is on lockdown, inmates' access to medical care is restricted, and routine appointments for non-emergency conditions are rescheduled "pursuant to IDOC policies and procedures." Defendants also assert that neither Williams nor Dr. Obaisi reviewed any of the medical request slips submitted by Plaintiff between July 18, 2012, and August 8, 2012, nor were they made aware of

those requests. In particular, Dr. Obaisi, in his declaration, stated that any written requests for medical attention submitted by inmates at Stateville are reviewed by medical technicians or administrative personnel for the IDOC, who then determine what action should be taken. Defendants did not submit any IDOC policies in support of their motion.

Following the filing of Defendants' motion for summary judgment, Plaintiff submitted a motion to pursuant to Fed. R. Civ. P. 56(d), indicating that he required additional discovery to respond to the motion. In support of his motion, Plaintiff submitted to the court his discovery requests to Defendants and their responses. In particular, Plaintiff asked Defendants to produce any policies and directives governing the response to medical emergencies while the institution is on lockdown. Plaintiff also sought policies or directives governing sick call procedures in the cell house. The Defendants objected to these requests on the ground that they were unduly burdensome, vague, and ambiguous. Further, they contended that such policies were in the custody and control of the IDOC. Plaintiff ultimately filed a motion with this Court to subpoena those records from the IDOC.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). In ruling on a motion for summary judgment, the court must

consider the record as a whole, in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255.

Pursuant to Fed. R. P. 56(d), a non-movant may show by declaration or affidavit that he cannot present facts essential to justify his opposition to a summary judgment motion. In such a circumstance the court may defer considering the summary judgment or deny it, and allow the non-moving party time to obtain the relevant discovery. Rule 56(d) motions should be denied where the evidence sought is not relevant to the plaintiff's case. *Grayson v. O'Neill*, 308 F.3d 808, 816 (7th Cir. 2002).

## ANALYSIS

Defendants' motion for summary judgment argues: (1) Plaintiff failed to exhaust his administrative remedies as to Dr. Obaisi; (2) Plaintiff did not suffer from a serious medical condition, and regardless, Defendants were not aware of his repeated requests for medical attention following the fall and while the facility was on lockdown.

As a preliminary point, the Court must first address the issue of exhaustion, as the Seventh Circuit has held that the issue of exhaustion is a threshold matter and should be addressed before proceeding to any disposition on the merits. *See Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014) (exhaustion is a threshold issue); *Pavey v. Conley*, 544 F.3d 739, 741-42 (7th Cir. 2008); *see also Wagoner v. Lemmon*, No. 13-3839, __F.3d__, 2015 U.S. App. LEXIS 1783, at *10–*11 (7th Cir. Feb. 4, 2015).

The Court concludes that Defendant Obaisi is not entitled to summary judgment on the grounds that Plaintiff failed to exhaust his administrative remedies. Plaintiff's July 20, 2012, grievances, which the Defendants concede were fully exhausted, refer to both the fall itself and

the medical care Plaintiff received after the incident. Plaintiff requested to see a doctor, to receive pain medication, and to be scheduled for an MRI of his knee.

Under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), prisoners must properly exhaust all available administrative remedies before pursuing claims in federal court. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). A prisoner must exhaust his grievances in accordance with prison procedural rules. *Id.* (citing *Woodford v. Ngo*, 548 U.S. 81, 84 (2006)). The purpose of the exhaustion requirement is to alert prison officials to the problem and allow for corrective action. *Id.* (citing *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004)). Exhaustion is an affirmative defense, with the burden of proof on the defendants. *Id.* at 650 (internal citations omitted).

In order to exhaust his administrative remedies, a prisoner need not file multiple, successive grievances raising the same issues if the objectionable condition is continuing. *Id.* Separate complaints about particular incidents are only required if the underlying facts or the complaints are different. *Id.* Rather, when a prison has received notice of, and an opportunity to correct, a problem, the prisoner has satisfied the exhaustion requirement. *Id.* In this case, Plaintiff's complaints are with the adequacy of his treatment for his injuries resulting from the July 17, 2012, fall, an issue that was raised in his July 20, 2012, grievances. The fact that Plaintiff did not name Dr. Obaisi in the grievances or complain about his treatment is irrelevant. While state regulations require the prisoner to include the name of each person involved in the complaint, or as much descriptive information as possible, *see* 20 Ill. Admin. Code § 504.810(b), "grievances are intended to give prison administrators an opportunity to address a shortcoming, not to put individual defendants on notice of a lawsuit." *Glick v. Walker*, 385 Fed. App'x 579,

582 (7th Cir. 2010) (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)). Here, the grievances were sufficient to put prison officials on notice that Plaintiff alleged he was not receiving adequate treatment for his injuries as a result of the fall, which was a continuing complaint. Therefore, Dr. Obaisi's motion for summary judgment on exhaustion grounds is denied.

As to the merits, in order to establish deliberate indifference, Plaintiff must prove: (1) the existence of an objective, serious medical need; (2) that the Defendants knew of and disregarded a substantial risk of harm to the inmate. *Greeno v. Daley*, 414 F.3d 645, 652–53 (7th Cir. 2005).

As to the first element, there is no dispute that Plaintiff suffered a head injury that required treatment, including 24-hour observation at the Stateville infirmary. Plaintiff later complained of severe headaches and accompanying symptoms that caused Dr. Obaisi to prescribe several medications. This clearly constitutes an objectively serious medical condition. *See Greeno*, 414 F.3d at 653 (defining a serious medical condition as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention.").

As to the issue of whether Defendants knew of and disregarded a substantial risk of harm to Plaintiff, the Court finds that there are material disputes of fact that preclude summary judgment, particularly in regard to how inmate health requests are handled during lockdown periods. In this regard, "[l]ockdowns are a part of prison life and a necessary means for prison officials to maintain prison security." *Byrd v. Godinez*, No. 95 C 1434, 1995 U.S. Dist. LEXIS 8308, at *14 (N.D. Ill. June 15, 1995) (citing *Turner v. Safley*, 482 U.S. 78, 84–85 (1987); *King v. Fairman*, 997 F.2d 259, 262 (7th Cir. 1993)). Given this, lockdowns, in and of themselves, are not violative of the Constitution, but the conditions under which the inmates are confined must

7

not violate the Eighth Amendment. *Lucien v. Godinez*, 814 F. Supp. 754, 757 (N.D. Ill. 1993); *see Waring v. Meachum*, 175 F. Supp. 2d 230, 237–38 (D. Conn. 2001).

Here, Plaintiff contends that just prior to the lockdown, he suffered a head injury serious enough to warrant immediate treatment and 24-hour observation, but was unable to obtain any followup care during the 21-day lockdown despite more than a dozen requests. Plaintiff also maintains in a declaration submitted with his response to the summary judgment motion that other inmates were taken to the HCU during this time period or seen during sick call in the cellhouse, but he was not. He also contends that during this time period, he submitted grievances which were forwarded to the HCU for a response. Although "self-serving," this declaration rests on personal knowledge, and is admissible at the summary judgment stage. *See Obriecht v. Raemisch*, 565 Fed. App'x 535, 538 (7th Cir. 2014).

Based on the record before the Court, there are questions of fact as to how determinations regarding access to inmate health care are made during lockdowns, as well as who makes those determinations. Defendants submitted declarations stating that they do not review requests for medical attention submitted by inmates. Rather, those requests are reviewed by IDOC medical technicians/administrative personnel. When the institution is on lockdown, scheduled routine, non-emergency clinic appointments are rescheduled pursuant to IDOC policies, according to Dr. Obaisi's declaration.

However, Defendants' declarations do not address how medical emergencies are defined, and how such emergencies treated during a lockdown. Arguably, Plaintiff was experiencing a medical emergency. Plaintiff's medical request slips and grievances described symptoms including nausea, "glittery spots" in his vison, dizziness, vomiting, and balance problems. Such

8

symptoms certainly can constitute an "emergency," and it appears that a correctional officer who observed Plaintiff vomiting brought him directly to the HCU on Aug. 9, 2012.

Defendants' motion also does not address the fact that Plaintiff's grievances also were forwarded to the HCU for review, and no information is provided as to who would have reviewed those grievances. Plaintiff has the burden of demonstrating that the communications he made, in their "content and manner of transmission, gave the prison official[s] sufficient notice to alert [them] to an 'excessive risk to inmate health or safety.' " *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996). Plaintiff has averred that he submitted medical requests and grievances in the manner provided by the IDOC rules, and that these requests were sent to the HCU. On this record, the Court cannot find as a matter of law that Defendants were not responsible for reviewing or responding to these requests.

Defendants contend, at least in regard to the medical requests, that responding to these requests was not their responsibility. However, they have not produced the IDOC policies upon which they rely, nor did they attach these policies to their motion for summary judgment. While it is possible that providing copies of certain IDOC policies to Plaintiff may pose security risks, this was not the basis cited by Defendants in denying Plaintiff's discovery requests. Rather, Defendants argued that Plaintiff's requests were overly broad, unduly burdensome, vague, and regardless, were in the custody and control of the IDOC. While those policies may be promulgated by the IDOC, the Court has no doubt that doctors at the facility, like Dr. Obaisi, have access to such policies. Such policies may provide a basis to challenge Defendants' assertions that they played no role in determining what inmates would be seen by doctors during the lockdown. Regardless, they are relevant to Plaintiff's case. Therefore, the Court finds that Plaintiff's motion for additional discovery pursuant to Fed. R. Civ. P. 56(d) is well-taken.

Additionally, based on a review of the record, the Court determines that counsel should be recruited to assist Plaintiff. In its December 19, 2014, order denying Plaintiff's request for counsel, this Court indicated that it would review the record in full and revisit Plaintiff's request if there was "a reasonable likelihood that the presence of counsel would have made a difference in the outcome of the litigation." Based on a review of the parties' submissions, the Court concludes that this is such a case. In addition to factually complicated questions regarding inmates' access to healthcare during lockdowns and Defendants' role (if any) in determining what inmates are seen by doctors and when, Plaintiff also raises the issue of whether Dr. Obaisi's treatment of him was adequate. The Seventh Circuit has recognized that cases involving complex medical evidence, particularly those involving assessments of the adequacy of treatment, are especially difficult for *pro se* prisoner inmates to litigate. *Henderson v. Ghosh*, 755 F.3d 559, 566 (7th Cir. 2014). Further, the question of whether Defendants were deliberately indifferent requires evidence as to their state of mind, another issue that presents difficulty for pro se litigants. *Id.* (citing *Olson v. Morgan*, 750 F.3d 708, 712 (7th Cir. 2014) (rejecting argument that "state of mind issues are categorically too difficult for *pro se* litigants," but observing that "some state-of-mind issues may involve subtle questions too complex for pro se litigants."). Based on a consideration of all of these factors, the Court concludes that the recruitment of counsel is warranted in this case.

## CONCLUSION

For the reasons stated herein, Defendants' motion for summary judgment (Dkt. No. 38) is denied without prejudice. Plaintiff's "Motion to Issue Subpoena Upon I.D.O.C./Stateville Correctional Center" (Dkt. No. 48) is denied without prejudice to recruited counsel pursuing this

discovery. Plaintiff's "Motion to Deny Defendants' Motion for Summary Judgment" (Dkt. No. 49), which the Court interprets as a motion for additional discovery pursuant to Fed. R. Civ. P. 56(d) is granted to the extent that Defendants' motion for summary judgment is denied without prejudice and the Court recruits counsel to represent Plaintiff and determine what additional discovery is needed in this matter. Plaintiff's "Motion for Extension of Time" (Dkt. No. 51) is granted to the extent that the Court consider's Plaintiff's subsequently filed response to Defendants' Motion for Summary Judgment as timely. Gary S. Kaplan, of Seyfarth Shaw, LLP, 131 S. Dearborn St., Suite 2400, Chicago, IL 60603, is recruited to represent Plaintiff in accordance with counsel's trial bar obligations under the District Court's Local Rule 83.37 (N.D. Ill.). Counsel should confer with Plaintiff within the next 60 days, and report to the Court as to what additional discovery he needs to proceed in this matter. A status hearing is set for _____ at _____.

ENTERED:

Dated: 3/23/2015

CHARLES R. NORGLE
United States District Court Judge